FRANK RODINE, APPELLEE, v. IOWA HOME MUTUAL CASUALTY COMPANY, AN INSURANCE CORPORATION, APPELLANT.

106 N. W. 2d 391

Filed November 25, 1960. No. 34760.

*Haney & Walsh,* for appellant.

*Melvin K. Kammerlohr* and *Whelan & Whelan,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee asked damages for breach of an alleged oral contract with appellant indemnifying appellee against loss for damages caused to the property of others by reason of the operation of a truck owned and operated by appellee. The amount of the recovery sought was the expenditures appellee was required to make because of damages caused by an accident in which his truck was involved about December 22, 1952.

The substance of the cause of action stated in the second amended petition of appellee, hereafter designated petition, is that appellant through Sam Arnold, its authorized local selling agent at Hastings, Nebraska, in consideration of a premium, agreed to insure appellee for 1 year on or about December 16, 1952, with

a policy of insurance identical with a policy previously issued to appellee by appellant on the same specifically-described property and on the same terms and conditions except for the commencement and expiration dates of the term of the policy, the expiration date of said previous policy being October 3, 1952, a copy of portions of the policy being attached to and made a part of the pleading; that Sam Arnold, the agent, had actual or apparent authority from appellant to sell property damage liability insurance with a coverage not to exceed $5,000 on each vehicle insured and of unlimited territorial coverage within the United States and to bind appellant thereby; that appellant by action of its home office in Des Moines, Iowa, accepted and ratified the agreement of its agent, Sam Arnold, on the day it was made; that all of said written and oral agreements constituted the contract between appellant and appellee; that appellant became liable under the terms of the agreement to pay any amount not in excess of $5,000 for which appellee became liable for damages to property because of the ownership and operation of the truck described in said agreement and owned by appellee and in reference to which the said agreement was made; that by the agreement appellant bound itself to defend any suit against appellee and pay all expenses and costs incident thereto; that on or about December 22, 1952, the truck while being operated by an employee of appellee in the State of Missouri was involved in an accident as a result of which damages were caused to property of other persons in that state on account of which appellee was compelled to and did pay the sum of $3,592.93; that as a direct result of the accident appellee was required to incur and pay for services of his legal counsel $743.95 and other necessary expenses in the sum of $84.37; and that all of the expenditures were necessary, fair, and reasonable and were caused by the refusal of appellant to perform its agreement with appellee made and existing as aforesaid.

The recovery sought by appellee was $4,421.25 with interest and costs.

The answer of appellant was a denial of the claims made in the petition of appellee and an assertion by appellant that any contract entered into by it and appellee was a written one consisting of a policy of insurance issued to appellee by appellant on December 17, 1952, in accordance with the request of the former for sufficient insurance to secure the release of his truck from the port of entry at Fort Scott, Kansas, and to cover it on the return trip to Hastings, Nebraska, a copy of which policy of insurance was attached to and made a part of the answer of appellant; that the issuance of the policy of insurance was confirmed by telegram to the port of entry that date and a copy of the telegram was attached to and made a part of the answer; that any prior oral dealings of appellee and appellant were merged in the said written contract; and that the policy of insurance by its terms provided no insurance or indemnity coverage to appellee for any accident occurring in the State of Missouri.

The trial of the case resulted in a verdict against appellant and in favor of appellee in the amount claimed. Appellant made a motion for a directed verdict at the close of the testimony offered and received in the case, which was denied. A motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial was made by appellant and was denied. Judgment was rendered in accordance with the verdict. This appeal contests the correctness of the action of the trial court.

Appellee in December 1952 lived near Hastings, was a farmer, a feeder of cattle, a buyer of grain, a dealer in all kinds of feeds, and the owner and operator of a truck. He had transported grain to Kansas, Missouri, Oklahoma, and Texas and on the return trips hauled feed and salt until there was a decrease in the demand for the service about October 1952 when he ceased main-

taining a regular schedule and contemplated selling his truck.

In December 1952 he owned a Chevrolet tractor, motor No. FEA 358154, and a 1946 Fruehauf semi-trailer, factory No. SF 14089. The tractor and trailer will be referred to herein as the truck. In that month appellee loaded the truck with a cargo of baled hay for transportation to a government disaster area in Kansas and Missouri for the purpose of selling it there because he thought it would bring more money than it would elsewhere. Raymond Osgood, designated Osgood herein, a driver for appellee, operated the truck on this trip. He was given no specific instructions by appellee. Appellee heard from Osgood when he was about 50 or 75 miles west of Scott City, Kansas. Fort Scott, Kansas, was probably intended rather than Scott City, Kansas. Osgood reported that he could not sell the hay. The driver of the truck reported to appellee when he was at the port of entry at Fort Scott, Kansas. He then said that the truck would not be given clearance because it had no insurance coverage.

Appellee called on Sam Arnold, hereafter called Arnold, who was engaged in the insurance business in Hastings, the following morning, December 17, 1952. Appellee had secured insurance to meet his needs at different times during a period of about 17 years through Arnold from appellant. The premiums on the insurance policies which he secured from Arnold were paid to him by appellee when the policies were received from the company which issued them. Any claim appellee made because of the insurance was presented through the office of Arnold. All insurance policies appellee secured from appellant were issued by it at its home office at Des Moines, Iowa.

The truck had public liability and property damage insurance coverage issued by appellant for 1 year which expired on October 3, 1952. That policy on the truck was not renewed. A renewal policy was prepared and

tendered by appellant to appellee for an additional 1-year period from October 3, 1952, but it was not accepted by appellee because he was attempting and intended to sell the truck.

Appellee told Arnold at his office on December 17, 1952, that the insurance on the truck had expired but appellee thought insurance would not be required for transportation of hay since it was a farm commodity; that he had never been detained at a port of entry before when he was trucking hogs or cattle to St. Joseph and Kansas City, Missouri; and that was what he figured on the hay—that he did not need insurance. He told Arnold that he had hay on the truck and he had to have some insurance. Appellee testified he said to Arnold in his office on that date that he, appellee, wanted the same kind of a policy as the last one he had that was in force—the old policy. Arnold asked appellee for the number of it but he did not have it. Arnold secured the number of the old policy that was in force from his files and wrote something, "* * * a policy or a thing right there at that time, and when he fixed it all up for us * * *." Appellee figured he was insured. Appellee said he left the office of Arnold with that in mind, that he was protected, and "I had insurance made out * * *." Appellee afterwards testified that he did not know what Arnold wrote at that time and that he then received nothing in writing from Arnold. Appellee said that when he told Arnold he wanted insurance the same as the policy last in force he referred "To the policy that was in force and had no limitations on" which expired October 3, 1952. When appellee left the Arnold office that morning he advised the port of entry at Fort Scott, Kansas, by telephone that he had made arrangements for insurance on the truck. The person with whom he talked asked where the policy of insurance was made out and the appellee told him at Des Moines. The man at the port of entry told appellee he would not accept information of

the existence of insurance over the telephone and that appellee should get a telegram from the office at Des Moines before the port of entry could consider whether satisfactory insurance had been secured. Appellee returned to the Arnold office and told him what the man at the port of entry had said and what he requested. Arnold called the insurance company office in Des Moines by telephone and told the person with whom he talked what the port of entry required. Appellee was present but in his testimony did not attempt to state what he heard Arnold say in that conversation. The next time appellee heard from Osgood he was in Springfield, Missouri.

Appellant on December 18, 1952, issued a new policy of public liability and property damage insurance on the truck to appellee as insured which policy was in all respects satisfactory to him except it contained a provision limiting the use of the truck covered by the insurance to "within a 300 mile radius of Hastings, Nebraska, in the State of Nebraska; 260 miles into Kansas from a point where U. S. Highway No. 281 intersects the Nebraska-Kansas state line." Appellant advised the Kansas port of entry at Fort Scott, Kansas, by telegram that it had issued public liability and property damage coverage on the truck of appellee while it was used in the State of Kansas. The policy of insurance issued by appellant December 18, 1952, was sent to Arnold and was delivered by him to appellee. He on January 16, 1953, requested that the policy be canceled because he claimed it was not what he had requested on December 17, 1952, because of the limitation contained therein concerning the area within which the use of the truck was covered by the policy. The policy was that day canceled on request of the insured. Appellee paid the premium on the policy from December 17, 1952, to January 16, 1953, the date it was canceled. The policy of insurance of appellant issued to appellee which expired October 3, 1952, afforded public liability and

property damage coverage on the truck without limitation as to the use of the truck in the United States.

Arnold testified he had been in the general insurance business at Hastings for 30 years and he represented a number of insurance companies including appellant. The scope of his authority as a representative of appellant is stated in a document produced in evidence which contains the following: "The Company hereby appoints the said S. A. Arnold dba Arnold Insurance Agency as a soliciting Agent for Hastings, Nebraska and vicinity, with authority only to solicit applications for insurance acceptable to the Company, and to collect and receipt for fees for transmission to this Company at Des Moines, Iowa, on such applications as are approved by the Company and upon which policies are issued by the Company." Appellant did not furnish Arnold any incompleted forms of insurance policies and he had never filled out, completed, or issued any policies of insurance for appellant. His authority to represent appellant was only as a soliciting agent. Arnold was acquainted with appellee for a considerable period of time and had during that time secured insurance policies for him from appellant. Arnold made application to appellant at the solicitation of appellee for a policy of insurance covering a truck owned by him for the period of 1 year which expired October 3, 1952. The policy was issued at the home office of appellant, mailed to Arnold, and he delivered it to appellee. He came to the office of Arnold December 17, 1952, and they had a conversation about insurance of the truck which appellee said was then at Fort Scott, Kansas. He requested Arnold to see if he could get appellee insurance coverage on the truck. Appellee said that the truck was detained at the Fort Scott, Kansas, place and he needed some insurance to get it released so that he could get it home. The home of appellee was Hastings, Nebraska. Arnold after the conversation made an oral application to appellant by a telephone call to its home office in Des Moines for public liability

and property damage coverage so that appellee could get the truck loose from the port of entry. Arnold asked appellant for a 300-mile radius provision in the policy because the local radius was 75 miles, the next or intermediate was 150 miles and that was not enough to get appellee to and from Fort Scott, Kansas, so Arnold asked a 300-mile radius from Hastings, Nebraska. Arnold said he referred the home office of appellant in the telephone conversation of December 17, 1952, to the last policy that had been issued, in which appellee was named as insured and which was then in the home office files, for information to complete the policy he had asked for such as description of the truck, motor number, and serial number. The policy referred to by Arnold as the last policy issued was dated September 18, 1952. The policy period was stated therein as October 3, 1952, to October 3, 1953, and the policy was identified, offered in evidence, and admitted in the trial of this case as exhibit No. 8. This policy was not ordered or accepted by appellee and it never became effective. Arnold made no request to appellant to issue any coverage on the truck for appellee in Missouri. The request of Arnold was accepted by appellant, a policy was issued (exhibit No. 2), sent by mail to Arnold, and he transmitted it to appellee. He afterwards returned that policy of insurance to Arnold for cancellation and it was canceled January 16, 1953, as shown by the exhibit. Arnold said he asked appellant for a 300-mile radius because that was necessary to get the truck home to Hastings, Nebraska. Arnold and appellee had no conversation December 17, 1952, regarding any territorial limitation in the policy he asked Arnold to get for him.

Appellee testified that Osgood called him and told him about the accident. Appellee next saw the truck after it left Hastings in charge of Osgood shortly before Christmas of 1952 at Forrest City, Missouri. It was in bad condition. It was standing in the filling station or against it all mashed up. The canopy of the service sta-

tion had fallen down onto the truck. Appellee told Arnold before Christmas in 1952 about the accident in which the truck was involved and what had happened in Forrest City. The truck appellee saw at Forrest City, Missouri, at the filling station was the same one appellee had asked Arnold to secure coverage for at his office December 17, 1952. Forrest City, Missouri, is 160 miles from Hastings. There were numerous claims for damages asserted against appellee as a result of the accident in which the truck was involved. Appellant failed and refused to take any action in reference to them. Appellee necessarily, fairly, and reasonably expended an amount equal to the recovery he seeks in this case in defending against and disposing of the claims for damages against him.

The essence of the claim of appellee as stated in his petition is that on or about December 16, 1952, Arnold was an authorized local selling agent for appellant at Hastings, Nebraska; that he as such agent had authority, actual or apparent, from appellant to sell property damage liability insurance not in excess of $5,000 on each vehicle insured with unlimited territorial coverage within the United States and thereby by his acts in that regard to bind appellant by an agreement made with Arnold that appellant by and through Arnold, its authorized local selling agent, agreed to insure appellee for 1 year from that date by a policy of insurance identical, except as to the policy period, with a policy previously issued to him by appellant on the same specifically-described property, that is, his truck, which previous policy expired on October 3, 1952, and is exhibited by the record as exhibit No. 1; that appellant at its home office accepted and ratified the agreement of its agent Arnold on the day it was made and became thereby liable to pay an amount not in excess of $5,000 for which appellee became responsible for damages because of his ownership and operation of the truck which was thus insured; and that appellant was by the agreement bound

to defend any action against appellee for such damages and to pay all costs and expenses incident thereto.

There is an absence of evidence that Arnold had actual authority of the character and extent alleged by appellee in his petition and above recited. The actual authority granted to Arnold by appellant was evidenced by and expressed in a written and executed agency agreement between appellant and Arnold in which the former was called "Company" and the latter the "Agent." The relevant parts thereof are the following: "* * * nothing contained herein shall be construed to create the relation of employer and employee between said Company and said Agent. * * * The Company hereby appoints the said S. A. Arnold dba Arnold Insurance Agency as a soliciting Agent for Hastings, Nebraska and vicinity, with authority only to solicit applications for insurance acceptable to the Company, and to collect and receipt for fees for transmission to this Company at Des Moines, Iowa, on such applications as are approved by the Company and upon which policies are issued by the Company. * * * All fees and money received by the Agent for business transacted under this agency contract shall be in trust for the said Company to be transmitted promptly to its office at Des Moines, Iowa * * *. The Company retains the right to reject, alter, suspend, or cancel at any time any application or any policy and return the unearned fees on such policy * * *." There was no effort made herein to show anything contrary to the terms and provisions of the agency agreement or that either party thereto at any time acted contrary to or in violation of its terms. The presentation of this case in this court by appellee does not include a contention that there was any evidence of actual authority of Arnold granted him by appellant to make such an oral agreement binding upon appellant as appellee pleaded in his petition. The written argument of appellee in this court goes no further than a claim of apparent authority of Arnold to make

the alleged agreement of December 16, 1952, and to bind appellant by it.

The evidence relied upon by appellee to support his claim that Arnold had apparent authority to enter into a policy of insurance or to make an agreement to do so binding upon appellant was that Arnold had previously presented policies of insurance to appellee which he had ordered through Arnold and which were issued and fully executed at the home office in Des Moines, Iowa, and were sent to Arnold to be given to appellee; that Arnold had received the premiums on the policies from appellee for transmission to appellant; and that appellee had presented any claims he had because of insurance to the Arnold office in Hastings, Nebraska. There was no other fact concerning any such claim. There was nothing in any of these acts that had any relation to authority of an agent to make an agreement for insurance or to issue an insurance policy binding upon the principal. The participation in or approval by appellant of any of these acts did not reasonably create an appearance of authority for Arnold to validly issue a policy of insurance or to make the agreement claimed by appellee.

Apparent or ostensible authority or agency for which a principal may be liable must be traceable to him and cannot be established by the acts, declarations, or conduct of the agent. The principal is only liable for appearance of authority caused by himself. Ostensible and apparent agency have been treated in this jurisdiction as being synonymous. In Farmers Cooperative Shipping Assn. v. Adams Grain Co., 84 Neb. 752, 122 N. W. 55, this court said: "It is well established that the authority of an agent cannot be established by his own acts and declarations. * * * Consequently, when we speak of the apparent authority of an agent as binding his principal, we mean such authority as the acts or declarations of the principal give the agent the appearance of possessing. Closely related to this doctrine

of apparent authority, and really a part of it, is the doctrine of estoppel under which a party who has knowingly permitted others to treat one as his agent will be estopped to deny the agency,"

Maryland Casualty Co. v. Moon, 231 Mich. 56, 203 N. W. 885, states: "The apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent. The principal is only liable for that appearance of authority caused by himself."

American Nat. Bank v. Bartlett, 40 F. 2d 21, declares: "The underlying rule of the law of agency is that 'The party dealing with the agent * * * must be able to trace the authority on which he relies back to some word or deed of the principal.' Mechem on Agency (2d Ed.) §§ 210, 750."

In Nebraska Tractor & Equipment Co. v. Great Lakes Pipe Line Co., 156 Neb. 366, 56 N. W. 2d 288, it is stated: "This court has treated ostensible and apparent agency as synonymous."

It is stated in Restatement, Agency, § 8, p. 25, that: "Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent." That statement of the law was quoted with approval by this court in Oleson v. Albers, 130 Neb. 823, 266 N. W. 632, 105 A. L. R. 714. See, also, Ware v. Home Mutual Ins. Assn., 135 Neb. 329, 281 N. W. 617; Stewart v. Spade Township, 157 Neb. 93, 58 N. W. 2d 841; 2 Am. Jur., Agency, § 103, p. 85.

It is generally required before a recovery may be predicated upon apparent authority that the person dealing with the agent must establish that at the time he dealt with the agent he believed that the agent was acting within the scope of his authority and that he had no notice or knowledge of any fact or circumstance

which would indicate to a reasonably prudent person in similar circumstances that the agent had no actual authority to bind his principal in the matter.

Appellee has secured the insurance he desired at various times during a period of about 17 years through Arnold from appellant. All of the policies were issued by appellant and fully executed by it at its home office in Des Moines, Iowa. They were sent to Arnold by the appellant, Arnold presented them to appellee, and Arnold received from him the premiums for transmission to appellant. This was notice to and knowledge of appellee that Arnold could not bind appellant on a contract of insurance. Arnold during this long period had not, to the personal knowledge of appellee, attempted to exercise any such authority.

There was additional evidence of appellee the effect of which was that he actually knew on December 17, 1952, while he was negotiating with Arnold that he had no authority to make any policy or agreement of insurance for appellant. Appellee after he left the office of Arnold the first time on the morning of December 17, 1952, advised the port of entry at Fort Scott, Kansas, by telephone that he had made arrangements for insurance on his truck and that the port of entry could release it. The person there to whom appellee talked inquired where the policy of insurance on the truck was made out and appellee answered that inquiry by saying at Des Moines. The man at the port of entry told appellee he would not accept information of the existence of insurance by telephone and that appellee should get a telegram from the insurance company at Des Moines before the port of entry would even consider whether satisfactory insurance had been secured on the truck of appellee. The testimony of appellee in this respect was definite, positive, and conclusive that appellee knew that Arnold had no authority to make any contract of insurance binding on appellant and that any insurance secured from appellant had to be acted

upon and made at its home office in Des Moines, Iowa. There is no evidence in this case of apparent authority of Arnold to make such an agreement as that relied upon by appellee in this litigation as a foundation for his claimed right of recovery from appellant.

A principal is not bound if the agent exceeds the scope of his authority and the absence of authority is known to the person dealing with him or if the third person knows or should know the limitation of the authority of the agent.

In Dietz v. City Nat. Bank of Hastings, 42 Neb. 584, 60 N. W. 896, it is said: "Where it was known to the president of a bank that the indorsement of the name of the payee on a note by one assuming to make such indorsement as the payee's agent, was outside the scope of his powers, such indorsement is not binding on the alleged principal."

Heitsch v. Minneapolis Threshing Machine Co., 29 N. D. 94, 150 N. W. 457, L. R. A. 1915D 349, states: "It is well established that a principal is not bound by the unauthorized acts of an agent which are not ratified by him, and where the lack of authority is known or should be known to the third party." See, also, National Council Junior Order United American Mechanics v. Thompson, 153 Ky. 636, 156 S. W. 132, 45 L. R. A. N. S. 1148; 2 Am. Jur., Agency, § 103, p. 85.

Appellee pleaded as a part of his cause of action that appellant at its home office accepted and ratified the alleged agreement which he claimed was made on or about December 16, 1952. There is no evidence that appellant knew before the commencement of this litigation almost 3 years after that date that appellee claimed he told Arnold on December 17, 1952, that appellee wanted a policy on his truck identical, except as to the policy period, with the previous policy thereon which expired October 3, 1952, identified herein as exhibit No. 1, and that he claimed that Arnold agreed for appellant to insure appellee as to his truck on that basis. There is no

proof that appellant before this litigation had any information from any source of the insurance agreement claimed to have been made about December 16, 1952, as alleged in the petition of appellee. Arnold is the only person who communicated with appellant concerning the negotiations and conversation had by appellee and Arnold on December 17, 1952. He testified that appellee came to his office that date and they had a conversation about the truck of appellee which he said was at Fort Scott, Kansas. He said it was detained there and he needed some insurance to get it released so that he could get it home, and he requested Arnold to see if he could get appellee insurance coverage on the truck. Arnold made an oral application to appellant at its home office in Des Moines for public liability and property damage coverage on the truck to assist appellee in getting the truck released from the port of entry and back to Hastings. Arnold asked appellant for a 300-mile radius from Hastings provision and referred the home office to the last policy that had been issued in which appellee was named as insured, identified in the record as exhibit No. 8, for information to complete the policy he had asked to be issued to appellee. Arnold said no request was made to him by appellee for coverage on the truck in Missouri and there was no conversation about territorial limitation but he asked for a 300-mile radius which he thought was necessary to get the truck from where it was to Hastings.

There could not have been any acceptance or ratification by appellant of the insurance agreement appellee claimed was made because acceptance or ratification is impossible for one who has no knowledge of the subject matter.

In Dietz v. City Nat. Bank of Hastings, *supra,* it is said: "To the ratification of an unauthorized indorsement of his name, knowledge of the act to be ratified must be shown to have been had by the party sought to be charged by the alleged ratification."

LeBron Electrical Works, Inc. v. Livingston, 130 Neb. 733, 266 N. W. 589, declares: "In order for a ratification of the acts and declarations of a third person to be binding upon a person, it must, as a rule, be made by him with full knowledge of all the facts necessary to an intelligent exercise of the right of election."

American Nat. Bank v. Bartlett, *supra,* contains the following: "From this statement, it is apparent that no question of ratification in fact, or of ratification by voluntary retention of the benefits of an agent's unauthorized act, is present; and this for the reason that neither the corporation nor Mr. Mayer had any knowledge of the execution of the mortgage prior to the bankruptcy. Full knowledge of the unauthorized act, and of all material matters related to it, is an essential of a valid ratification."

The oral application for an insurance policy covering the truck of appellee was made to appellant by Arnold on December 17, 1952, it was accepted, and a fully executed policy was issued by appellant in which appellee was designated the insured for the period of December 17, 1952, to December 17, 1953. It was transmitted by mail to Arnold and he delivered it to appellee. Appellant advised the port of entry of the issuance of the policy and passage of the truck was cleared by it. Appellee testified that the policy was satisfactory in all respects except the provision therein limiting the use of the truck within designated areas. Appellee on January 16, 1953, requested that the policy be canceled because he claimed it was not what he asked for on December 17, 1952. His objection was to the limitation of the policy concerning the areas in which the use of the truck was covered. Appellee paid the premium on the policy from December 17, 1952, to January 16, 1953, and it was canceled on the last date named. The petition of appellee in this litigation does not mention the issuance and existence of the policy of insurance last described. He elected to wholly disregard it though

it was in force at the time of the accident in which the truck of appellee was involved on December 22, 1952. Appellee did not seek reformation of the policy to eliminate the provision therein to which he objected but he has sought recovery on the basis of the alleged oral agreement for insurance which he says was made about December 16, 1952, by Arnold on behalf of and for appellant. This course of procedure has been disapproved by this court.

A recent decision of this court definitely indicates that if it is contended by an insured that a policy issued does not conform to the policy allegedly ordered from the agent, the remedy of the insured is not a suit at law, such as appellee is attempting to maintain to have a recovery otherwise than in accordance with the terms of the policy, but the proper remedy is for a reformation of the policy to conform to the alleged oral understanding. Adolf v. Union Nat. Life Ins. Co., 170 Neb. 38, 101 N. W. 2d 504. Of course, if appellee can prove that he made a different contract from that expressed in the policy which appellant issued to him on December 18, 1952, he may have it reformed and then have a recovery on it as reformed. It is said in Mutual Benefit Health & Acc. Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d 780: "If the insured can prove that he made a different contract from that expressed in the writing, he may have it reformed in equity, and he is not prevented by the mere fact that he accepted and retained the policy and did not examine it until after a loss occurred." See, also, Mogil v. Maryland Casualty Co., 147 Neb. 1087, 26 N. W. 2d 126. A litigant cannot, however, disregard the written contract as evidenced by a policy of insurance issued to him and have an action at law upon an alleged oral agreement inconsistent with the policy or a recovery not warranted by the policy.

The motion of appellant for a judgment notwithstanding the verdict should be sustained. The judgment is reversed and the cause is remanded to the dis-

trict court for Adams County with directions to sustain the motion of appellant for a judgment notwithstanding the verdict.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.